UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH RANDLE,

    Plaintiff,

  v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

17-CV-827
DECISION AND ORDER

On August 22, 2017, the plaintiff, Joseph Randle, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On March 5, 2018, Randle moved for judgment on the pleadings, Docket Item 9, and on March 20, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10.

For the reasons stated below, this Court grants Randle's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On August 28, 2013, Randle applied for disability insurance benefits. Docket Item 6 at 27, 102. He claimed that he had been disabled since September 30, 2011,

due to depression, anxiety, post-traumatic stress disorder, and panic attacks.  *Id.* at 102.

On January 17, 2014, Randle received notice that his application was denied because he was not disabled under the Act.  *Id.* at 115-18.  He requested a hearing before an administrative law judge ("ALJ"), *id.* at 119-21, which was held on May 20, 2016, *id.* at 47.  The ALJ then issued a decision on June 22, 2016, confirming the finding that Randle was not disabled.  *Id.* at 40.  Randle appealed the ALJ's decision, but his appeal was denied, and the decision then became final.  *Id.* at 9-12.

## II.     RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Randle's objection.  Randle was examined by several different providers but only one—Adelia Sazonov, M.D., a psychiatrist—is most significant to this Court's review of his claims.

### Adelia Sazonov, M.D., Psychiatrist

On May 24, 2016, Adelia Sazonov, M.D., a psychiatrist, completed a "psychiatric evaluation" of Randle.  Docket Item 6 at 1182.  Dr. Sazonov noted that she examined Randle between March 21, 2016, and May 23, 2016, and treated him at least once every two weeks.  *Id.*  She diagnosed acute post-traumatic stress disorder and moderate recurrent major depressive disorder.  *Id.*  Dr. Sazonov noted that Randle was prescribed several medications to treat his mental impairments, and that although he had a history of substance abuse problems, Randle did not "currently" (as of May 24, 2016) have any such problems.  *Id.*  She opined that Randle was disabled WITHOUT taking into consideration substance abuse."  *Id.* (emphasis in original).

2

Dr. Sazonov specifically found that Randle's depression caused "moderate symptoms" in the following areas: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight; (3) psychomotor agitation or psychomotor retardation; (4) decreased energy; (5) feelings of guilt; (6) feelings of worthlessness; (7) difficulty concentrating; (8) difficulty thinking; and (9) thoughts of suicide. *Id.* at 1183. She also found that Randle's depression caused "severe symptoms" in "[p]aranoid thinking." *Id.* In addition, she found that Randle had other "severe symptoms" in the following areas: (1) generalized persistent anxiety; (2) motor tension; (3) autonomic hyperactivity; (4) vigilance and scanning; (5) restlessness; (6) feeling keyed up or on edge; (7) difficulty thinking; (8) mind going blank; and (9) persistent irrational fear of object, activity, or situation that causes [him] to avoid the object, activity, or situation. *Id.* at 1184. Dr. Sazonov opined that Randle was mildly fatigued as a result of his mental impairments. *Id.*

Dr. Sazonov also found that when Randle experienced panic attacks, he had the following "severe symptoms": (1) a sense of impending doom; (2) a fear of dying; (3) intense fear, discomfort or apprehension; (4) palpitations, pounding heart, accelerated heart rate, and sweating; and (5) and chest pain. *Id.* at 1184. Dr. Sazonov found that Randle had the following "moderate symptoms" during his panic attacks: (1) feeling of dizziness, unsteadiness, lightheadedness, or faintness; (2) feeling of unreality (derealization); (3) feeling of being detached from oneself (depersonalization); (4) fear of losing control or going crazy; (5) trembling or shaking; (6) shortness of breath, smothering, or choking; (7) nausea, abdominal distress, chills, or hot flashes; and (8) numbness or tingling sensations (parenthesis).

3

Dr. Sazonov opined that Randle "experience[d] recurrent obsessions or compulsions [that were] a source of MARKED distress" and that "result[ed] in repetitive behaviors or mental acts." *Id.* (emphasis in original). Specifically, she noted that Randle obsessed over doors and had to check "locks multiple times." *Id.* at 1185.

According to Dr. Sazonov, Randle also "experience[d] recurrent and intrusive recollections of a traumatic experience that is a source of MARKED distress." *Id.* (emphasis in original). And those recollections resulted in the following "severe symptoms": (1) persistent avoidance of stimuli related to the trauma; (2) numbing of general responsiveness not present before the trauma; (3) efforts to avoid thoughts, feelings, or conversations associated with the trauma; (4) efforts to avoid activities, people, or places that arouse recollections of the trauma; (5) recurrent and intrusive distressing recollections of the trauma; (6) recurrent distressing dreams of the trauma; (7) flashbacks to the trauma; (8) feeling of detachment or estrangement from self or others; (9) restricted range of affect; and (10) intense psychological and/or physiological distress at exposure to internal or external cues that symbolize the trauma. *Id.* Randle's recollection of his traumatic experience resulted in "moderate symtoms" in his "[a]cting or feeling as if the trauma were recurring." *Id.*

### III. THE ALJ'S DECISION

In denying Randle's application, the ALJ evaluated Randle's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.

§ 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). "[A]n individual shall not be considered disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." *Id.* (quoting 42 U.S.C. § 1382c(a)(3)(J)). "The critical question is 'whether the SSA would still find the claimant disabled if she stopped using drugs or alcohol.'" *Id.* (quoting 20 C.F.R. § 416.935(b)(1)).

In this case, the ALJ determined at step one that Randle had not engaged in "substantial gainful activity" since September 30, 2011, the alleged onset date. Docket Item 6 at 30. At step two, the ALJ found that Randle had the following severe impairments: depression, anxiety, panic disorder, post-traumatic stress disorder, and polysubstance dependence. *Id.* At step three, the ALJ determined that Randle did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 31.

The ALJ then found that Randle

has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: capable of simple or complex tasks with only occasional interaction with supervisors, coworkers, or the public, when dealing with changes in the work setting, the claimant is limited to

6

simple work-related decisions, and absent more than two days a month due to effects of alcohol and drug use.

*Id.* at 32. At step four, the ALJ determined that Randle is "unable to perform any past relevant work." *Id.* at 34. And at step five, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that [Randle] can perform." *Id.* at 35.

But the ALJ then found that if Randle stopped using alcohol and drugs, he would

have the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: capable of simple or complex tasks with only occasional interaction with supervisors, coworkers, or the public, and when dealing with changes in the work setting, the claimant is limited to simple work-related decisions.

*Id.* at 36. So if drug addiction or alcoholism ("DAA") were not a contributing factor material to Randle's disability, he "would continue to be unable to perform past relevant work," *id.* at 38, but "there would be a significant number of jobs in the national economy that [Randle] could perform." *Id.* at 39. Specifically, the ALJ credited the vocational expert's testimony that Randle would then be able to perform jobs such as laundry sorter, warehouse worker, or assembler. *Id.*

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v.*

7

*Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

When there is medical evidence of a disability claimant's drug or alcohol abuse, the claimant "bear[s] the burden of proving DAA immateriality." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123-24 (2d Cir. 2012). And in reviewing a disability determination, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Id.* at 122. Nonetheless, "ALJs must let the parties and the reviewing courts know, in some intelligible fashion, where they stand on the pivotal issues of fact posed by the applications they adjudicate." *Chiappa v. Sec'y of Dep't of Health, Educ. and Welfare*, 497 F. Supp. 356, 358 (S.D.N.Y. 1980).

"Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making findings on which his ultimate decision rests, and in doing so he must address all pertinent evidence." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)). "[T]he

8

ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from that evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (emphasis in original). "[P]roviding 'an accurate and logical bridge' require[s] him to confront the evidence in [a claimant's] favor and explain why it [is] rejected before concluding that her impairments [do] not impose more than a minimal limitation on her ability to perform basic work tasks." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). "Where [courts] are 'unable to fathom the ALJ's rationale in relation to the evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ,' [courts] will not 'hesitate to remand for further findings or a clearer explanation for the decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any,

9

to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.'" *Id.* at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id.* "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

### A. Consideration of Dr. Sazonov's Opinions During Initial Five-Step Disability Determination

The ALJ correctly "segregate[d Randle's] disability determination from the substance abuse analysis, and consider[d] the impact of substance abuse only *after* the initial, five-step disability determination." *See Sierra v. Comm'r of Soc. Sec.*, 2018 WL 7681060, at *26 (S.D.N.Y. Dec. 6, 2018) (emphasis in original), *report and recommendation adopted sub nom. Sierra v. Berryhill*, 2019 WL 1259168 (S.D.N.Y. Mar. 19, 2019). Likewise, the ALJ appropriately addressed Dr. Sazonov's opinion when formulating Randle's RFC during his initial five-step disability determination:

10

> In a psychiatric evaluation dated May 24, 2016, Adelia Saganov, M.D., [sic] noted that one of the claimant's medication side-effects is akathisia, which may explain some of his body movements noted by other treatment providers. The doctor also specified that, at that time, the claimant had a history of substance abuse without current use. (Exhibit 21F, p. 3). On the same date, the claimant's treating counselor, Charles Librera, LCSW-R, completed a statement that reported the claimant was no more than moderately restricted from shopping and using public transportation, was moderately to severely limited in various social interactions, moderately limited in concentration and the ability to complete tasks in a timely manner, and had displayed tendencies of withdrawal from situations and experience symptom exacerbations. Mr. Librera noted the claimant was mildly limited from understanding and remembering complex instructions, and moderately limited from carrying out complex instructions and from making judgments on complex work-related decisions. (Exhibit 21F, pp.1-9). The undersigned notes that the claimant received treatment with this provider team starting in January 2016, following his most recent release, which is a period of sobriety. Despite the short treatment relationship, the undersigned places great weight upon these opinions because of the practice specialties of Dr. Saganov [sic] and Mr. Librera, and because this opinion is consistent with the record as a whole (e.g., Exhibit 8F, pp. 3-4). The undersigned relied upon this evidence to limit the claimant to simple or complex tasks, capable of simple or complex tasks, to only occasional interaction with supervisors, coworkers, or the public, and to making simple work-related decisions.

Docket Item 6 at 34. Because the ALJ's analysis suggests that Dr. Sazonov's opinions are well supported both by medically acceptable diagnostic techniques and by the medical record, it is not clear why the ALJ gave Dr. Sazonov's opinions only "great weight," *see id.*, as opposed to "controlling weight." See 20 C.F.R. § 404.1527(c)(2).[1] But that distinction may be semantic as the ALJ nonetheless found Randle to be disabled, and so any error in this regard was harmless.

---

[1] Charles Librera is a psychiatric social worker. Docket Item 6 at 1190. Both Mr. Librera and Dr. Sazonov treated Randle at Erie County Medical Center. *Id.* at 1180. Because Mr. Librera is not an "acceptable medical source," SSA regulations do not require his opinion to be treated in the same manner as that of Dr. Sazonov. *See* 20 C.F.R. § 404.1527.

### B. Consideration of Dr. Sazonov's Opinions During the ALJ's DAA Materiality Determination

When considering whether DAA contributed materially to a claimant's disability, "ALJs are directed to 'apply the steps of the sequential evaluation a *second time* to determine whether the claimant would be disabled if he or she were not using drugs or alcohol.'" *Sierra*, 2018 WL 7681060, at *26 (emphasis in original) (quoting SSR 13-2p). In the ALJ's DAA materiality analysis, she addressed Dr. Sazonov's opinion in the following manner:

> Additionally, the undersigned relied upon the opinions of Dr. Saganov [sic] and Mr. Librera to find the claimant capable of working in a national economy absent his drug and alcohol use.

Docket Item 6 at 38. That conclusory statement does anything but "build an accurate and logical bridge" between the medical evidence and the ALJ's conclusion. *See Woods*, 888 F.3d at 694 (quoting *Monroe*, 826 F.3d at 189). Even worse, the ALJ's cursory analysis ignores Dr. Sazonov's conclusion that Randle had disabling mental impairments regardless of substance abuse. Indeed, Dr. Sazonov explicitly and emphatically found that Randle was "psychiatrically disabled WITHOUT taking into consideration substance abuse." Docket Item 6 at 1182 (emphasis in original). And the ALJ also ignored Dr. Sazonov's conclusion that as of May 2016, Randle simply did not "have a substance abuse problem." *Id.*

An ALJ must address a treating physician's opinion that a claimant's impairments would not change even without the influence of drugs or alcohol in the same manner as she must address any other medical opinion from a treating physician. *See Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 420 (6th Cir. 2012) (concluding that "[t]he ALJ's failure to provide good reasons regarding the weight accorded [a treating

12

physician's] opinion with respect to the alcoholism-materiality determination does not meet any of the harmless error criteria"); *Knox v. Barnhart*, 60 F. App'x 374, 375, 376 (3d Cir. 2003) (ALJ appropriately applied treating physician rule to opinion that claimant's impairment "would not change even without the influence of drugs and alcohol"); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001) (considering whether any "of the physicians who examined or evaluated plaintiff addressed whether her alcohol abuse was a contributing factor in any of her claimed disabilities"). The ALJ clearly did not do that here.

If Dr. Sazonov's opinion was entitled to "great weight" as the ALJ found, Docket Item 6 at 34, then Randle was disabled regardless of DAA and, in fact, had no current DAA problem when the ALJ issued her decision. On the other hand, if the ALJ discounted those conclusions of Dr. Sazonov, she needed to say so and explain why. Either way, the ALJ's decision was flawed and remand is required.[2]

---

[2] Randle also argues that the ALJ failed to correctly conclude that Randle met medical listing 12.04 or 12.06; erred in concluding that Randle could occasionally interact with members of the general public; failed to properly apply SSR 13-2p by considering other records of treatment for mental health issues; and made a flawed credibility determination. Docket Item 9-1 at 19-29. "Because [Randle's] case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate" these issues, if necessary, by reconsidering whether Randle qualifies under Medical Listing 12.04 or 12.06; clarifying the basis of Randle's RFC to interact with members of the general public; addressing the other records to which Randle refers; and reconsidering credibility. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019). Randle also argues that the case should be remanded for consideration of new evidence. Docket Item 9-1 at 29-31. "Because this Court has determined that remand is necessary, . . . the ALJ should consider this evidence in the first instance on remand." *Catoe v. Berryhill*, 2019 WL 483319, at *8 (W.D.N.Y. Feb. 7, 2019). The mere fact that this new evidence postdates the ALJ's decision does not mean that it is irrelevant. *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (concluding that claimant's "post-1980 evidence is not irrelevant to the question whether he had been continuously disabled since 1977" because "[d]epending on the nature of the disability, such evidence could conceivably support a

"In situations where [courts have] no apparent basis to conclude that a more complete record might support the Commissioner's decision, [courts] have opted simply to remand for a calculation of benefits." *Michaels v. Colvin*, 621 F. App'x 35, 38 (2d Cir. 2015) (quoting *Rosa*, 168 F.3d at 83). "However, 'where there are gaps in the administrative record, [courts remand] to the Commissioner for further development of the evidence.'" *Id.* (quoting *Rosa*, 168 F.3d at 82-83). In this case, the ALJ erred in not addressing Dr. Sazonov's conclusion that Randle was disabled regardless of substance abuse. But this Court "just do[es] not know why the ALJ disregarded [Dr. Sazonov's] opinion," *Johnson-Hunt*, 500 F. App'x at 420 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007)), or even whether the ALJ disregarded that opinion. Because the error in this case turns on the ALJ's failure to adequately address an opinion, "the record is incomplete and 'further findings' are appropriate 'to assure the proper disposition of the claim.'" *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (quoting *Rosa*, 168 F.3d at 83).

---

finding that [the claimant's] condition when he visited doctors in the 1980s was the same as it had been since he injured his back in 1973, or at least since 1977").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Randle's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 22, 2019
          Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE